No. 29,868.

BOBBIE SCOTT, MARGARET SCOTT, FRANCIS SCOTT and REGINA SCOTT, by their Guardian, FRANK SCOTT, *Appellees*, v. JACK DEVINE, a Sole Trader doing business as DEVINE COAL COMPANY, and Subscribers at Consolidated Underwriters, *Appellants*.

(297 Pac. 669.)

Opinion filed April 11, 1931.

*C. O. Pingry, P. E. Nulton* and *G. L. Stevenson,* all of Pittsburg, for the appellants.

*Phil H. Callery, James E. Callery, Caroline A. Lowe* and *C. S. Denison,* all of Pittsburg, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This case is under the workmen's compensation law (R. S. 44-501, *et seq.*). Plaintiffs are dependents of Peter Scott, Sr., whose death they allege was caused by breathing bad air or carbon monoxide gas in the mine of the defendant, Jack Devine. The petition contained two causes of action, the first being grounded solely on the workmen's compensation law, and the second being on that law and a policy of insurance issued by the defendant Subscribers at Consolidated Underwriters to Jack Devine. The case was here before (*Scott v. Devine*, 129 Kan. 808, 284 Pac. 294), where the question of the liability under the insurance policy was presented and it was held that the contract in this case obligated the Underwriters to pay compensation to the employees, or their dependents, measured by the workmen's compensation law. After the decision of this court the case was tried to a jury, resulting in a verdict and judgment in favor of plaintiffs against both defendants. They have appealed and contend, *first,* that plaintiffs failed to show an offer or consent to arbitrate and to show a demand for compensation was made within six months after the death of the workman; *second,* that the evidence fails to prove the death of the workman was caused by accidental injury. These questions were at issue in the court below and were submitted to the jury on instructions, concerning which no question is now raised. As to the first of these questions Frank Scott, an adult son of the deceased workman and guardian for the minor dependents, plaintiffs in this action, testified:

"I know Jack Devine when I see him. Following my father's death I saw him at his house on West Fourth street at Pittsburg. It was six days after father died. My brother, Peter Scott, was with me. I told him I come to see about father's compensation and he says, 'Boys, I haven't got anything to do with it, you will have to go see Mastin Insurance Company up in the Globe building.' He said, 'Boys, we had a bad shot in the third south that blew a curtain down.' He said, 'I know we had bad air.' That is all he said. I went to the Mastin Insurance Company over in the Globe building here in Pittsburg. I seen Moncrieff. I saw Jack Devine at a later time on the street. I believe the same day I went to see him I said, 'We come down to get father's compensation,' and he said, 'I haven't got a thing to do with it,' and I said, 'Well, will you arbitrate it,' and he said, 'No, I haven't got a thing to do with it,' and so we went away. Then we went up to see Mr. Moncrieff in the Globe building. He was adjuster for Consolidated Underwriters. We walked in the office and he said, 'What can I do for you boys?' 'Well,' I says, 'we come up here to demand compensation for our father.' 'Well,' he says, 'who is your

father?' and I says, 'Pete Scott.' 'Well,' he said, 'I don't know as we owe him anything. I don't know anything about it.' I said, 'Didn't you get the notice that was served on you at the time?' He said, 'Yes, sir.' 'Well,' I says, 'what do you say about it?' 'Well,' he says, 'we can't do anything for you,' and I said, 'Well, will you arbitrate it?' and he says, 'No,' so we walked out of his office."

Appellants argue from this testimony that Devine and Moncrieff might not have known of the death of Peter Scott, and might have understood that claim for disability was being made for him. From the testimony above quoted and other evidence it is clear that Devine knew of the death of the workman and understood that compensation was being claimed because of his death. There may be some reason to argue that Moncrieff did not know of the death of the workman at the time Frank Scott talked with him, but under the statute, if the claim for compensation and offer to arbitrate were made to the employer, it is not material whether such claim and offer were made to the employer's insurance carrier.

With regard to the question whether the workman's death was caused by an accident arising out of and in the course of his employment, it is the claim of plaintiffs that the workman became overcome with a sudden accumulation of bad air in the mines, had to quit work and go home, and that his death resulted therefrom about three weeks later. Defendants contend that the death of the workman was the result of Bright's disease and was not influenced by bad air in the mine, and in fact there was no bad air there. There was much evidence on this question in the court below. It would serve no useful purpose to detail that evidence here. It is sufficient to say that we have examined the evidence and find an abundance of it to support the contention of plaintiffs.

Really this appeal presents no question of law. The only questions presented are those of controverted facts which were fully presented to and determined by the jury and the trial court.

The judgment of the court below is affirmed.

SLOAN, J., not participating.