No. 34,583

The Employers' Liability Assurance Corporation, Ltd., *Appellant*, v. Ernest Matlock, a Minor, et al. (Ernest Matlock, a Minor, *Appellee*.)

(98 P. 2d 456)

Opinion filed January 27, 1940.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellant.

*Homer V. Gooing,* of Eureka, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: In this action plaintiff, an insurance carrier, who had executed and delivered a standard workmen's compensation liability policy to employers for valuable consideration, attempted, by filing an independent action in the district court, to obtain a judgment which would relieve it from paying compensation to an employee who previously had been injured and in whose favor an award previously had been made by the commissioner of workmen's compensation, upon due hearing, against the employer and the plaintiff insurance carrier. All three parties participated in the hearing before the commissioner of compensation. The instant action by the plaintiff insurance carrier was instituted against the employee, a minor, his father as natural guardian, the employer Hollis Brothers, a copartnership engaged in the business of contracting for and drilling oil wells, and the state commissioner of workmen's compensation.

The petition undertook to plead three causes of action. In the first, plaintiff sought to have the insurance policy canceled on the ground of the alleged fraud of one of the copartners in procuring the policy. In the second cause of action it sought to have the policy reformed to conform to the facts, on the theory of mutual mistake of fact, in the event it should be decreed plaintiff was not entitled to the relief sought in its first cause of action. In the third cause of action plaintiff sought injunctive relief. It asked the defendants be restrained from proceeding further with the review of the compensation appeal then pending in the same district court and further that no collection be attempted on the award until determination of the present action. The insurance policy and the award were attached to and made a part of the petition.

The petition, after identifying the parties to the action, in substance alleged: At about nine o'clock a. m. of October 22, 1937, Ernest Matlock, suffered an accidental injury arising out of and in the course of his employment with Hollis Brothers, the injury being

compensable under the compensation act. At that time Hollis Brothers had no compensation insurance coverage with plaintiff or with any other insurance carrier. Thereafter and at approximately two o'clock p. m. of the same day, Otto Hollis, one of the copartners, doing business under the firm name and style of Hollis Brothers, came to plaintiff's office in the city of Wichita, and sought to obtain a compensation insurance policy. In response to questions asked him by plaintiff's representative, Otto Hollis, on behalf of Hollis Brothers, represented: "(a) that they had carried compensation insurance for five years and had never had any policy canceled, and (b) that they had had only two minor accidents to their employees, and (c) that there were no actions and no claims pending against them at that time." Each of the foregoing answers was false and untrue. Certain other compensation insurance policies carried by Hollis Brothers had been canceled within a few days prior to October 22, 1937, the date of the accident. Hollis Brothers, in the operation of their business, had suffered losses in the past, due to numerous severe injuries to employees, including at least one death loss. The statements and representations made by Otto Hollis were false and fraudulent. Plaintiff would not have issued the policy had the true facts been made known to it. Based upon the statements of Otto Hollis, plaintiff's representative took the application for insurance and received from Hollis a check in the approximate sum of $112. The application of Hollis Brothers was forwarded to the home office of the plaintiff, and relying upon the misrepresentations of Hollis, plaintiff issued a policy of compensation insurance which it dated back to 12:01 a. m., October 22, 1937. Subsequent to the issuance of the policy, so antedated, Ernest Matlock filed his compensation claim against Hollis Brothers and against plaintiff as the insurance carrier. On June 13, 1939, the employee was awarded compensation in the sum of $1,360.80. An award was also made against plaintiff for $226, medical and surgical bills, and for $46.70 fees. At the hearing before the commissioner of compensation plaintiff offered to introduce evidence to show it was not properly the insurance carrier at the time of the accident and that the policy should not have been binding and in force as of the time of the accident. The introduction of that testimony was made unnecessary by a stipulation of facts thereon. The commissioner of compensation refused to reform the policy, stating in the award as follows:

"While the evidence discloses that the accident occurred before the policy

was issued, the examiner is of the opinion that the commissioner of workmen's compensation cannot reform the policy, but that such a question is an equity question for the courts."

As heretofore stated the foregoing constitute substantially the facts as pleaded by the plaintiff.

The instant action was filed in the district court on July 23, 1938. The following demurrer lodged against the petition was sustained:

"The defendant Ernest Matlock, a minor, by Homer V. Gooing, his guardian *ad litem,* demurs to the plaintiff's petition herein on the grounds that

"1. The court has no jurisdiction in this suit of the subject of the action;

"2. There is another action pending in this court between the same parties for the same cause;

"3. The petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against this defendant."

The first ground of the demurrer presents the fundamental issue in this lawsuit. Unless the district court, under the circumstances, had jurisdiction over the subject matter of this action, namely, the compensation insurance policy, we need not consider the second ground of the demurrer and indeed cannot reach the third ground in the instant appeal.

We are, therefore, squarely confronted at the outset with the question of the jurisdiction of the district court to entertain this action while plaintiff's appeal from the award is pending in the district court and before plaintiff's remedy under the compensation law has been fully exhausted. The answer must depend upon the legislative intent and purpose as expressed or fairly implied in the workmen's compensation law of this state. A few inquiries may be helpful. Was it the intent and purpose of the compensation law to cover every phase of the injured employee's right to compensation and the intent to cover completely the procedure for obtaining that compensation? Was it intended to invest in one tribunal, subject to the right of appeal, the right to hear and the power to dispose of every phase and branch of a controversy involving a claim for injuries sustained by a workman in the course of compensable employment? We may state the question in another way. Was it intended the procedure outlined in the compensation act should be substantial, complete and exclusive, or was it intended that parties subject to the act, namely, the workman, employer or insurance carrier might institute separate and independent actions in common-law courts in order to have adjudicated various branches or issues of liability before exhausting the remedy provided by the compen-

sation law? We may also inquire what was the intent and purpose of the insurance carrier in these respects, as disclosed by its contract of insurance which was made for the direct and primary benefit of the workman and which policy must be made in conformity with the insurance compensation law?

Under the provisions of G. S. 1935, 44-548, full jurisdiction and power is conferred upon the workmen's compensation commission for the supervision of the administration of the compensation act. Under G. S. 1935, 44-532, every employer, subject to the act, is required to secure compensation to his employees by adequate insurance. G. S. 1935, 44-559, provides:

"Every policy of insurance against liability under this act *shall be in accordance with the provisions of this act and shall be in a form approved by the commissioner of insurance.* Such policy shall contain an agreement that the insurer accepts all of the provisions of this act, that the same may be enforced by any person entitled to any rights under this act as well as by the employer, *that the insurer shall be a party to all agreements or proceedings under this act, and his appearance may be entered therein and jurisdiction over his person may be obtained as in this act provided, and such covenants shall be enforceable notwithstanding any default of the employer."* (Italics ours.)

The instant policy provides:

"One. (*a*) To pay promptly to any person entitled thereto under the workmen's compensation law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due.

. . . . . . . . . . . . . .

"D. The obligations of paragraph *one* (*a*) foregoing are hereby declared to be *the direct obligations* and *promises* of the corporation to any *injured employee* covered hereby, or, in the event of his death, to his dependents; and to each such employee or such dependent the corporation is hereby made *directly* and *primarily* liable under said obligations and promises. *This contract is made for the benefit of such employees* or such dependents and is enforceable against the corporation, by any such employee, or such dependent in his name or on his behalf, at any time and in any manner permitted by law, whether claims or proceedings *are brought against the corporation alone or jointly with this employer."* (Italics ours.)

G. S. 1935, 40-1109 (*m*), provides "jurisdiction of the insured shall be jurisdiction of the insurer and the insurer shall be bound by every agreement, adjustment, award or judgment rendered against the insured." G. S. 1935, 44-523, contains an express mandate that the commissioner shall not be bound by technical rules of procedure, and G. S. 1935, 44-522, directs the commissioner *to hear and determine the matters presented,* and to make findings or an award such as he

shall determine *fair and equitable under the provisions of the act.* In view of the foregoing statutory provisions it cannot seriously be doubted that compensation insurance is an integral and indispensable part of our statutory system of compensation. Nor can it be doubted that the various provisions of the compensation law form as definite a part of the insurance policy as though the various statutory provisions were expressly incorporated in the insurance contract. Nor can it be doubted that insurance carriers have been made subject to the jurisdiction of the compensation commission. In *Norman v. Consolidated Cement Co.,* 127 Kan. 643, 274 Pac. 233, this court said:

"In a comprehensive statute the legislature manifestly undertook to cover *every phase* of the right to compensation *and of the procedure for obtaining it.* It provided an administrative method in order to avoid the delay resulting from prolonged litigation and the uncertainty and expense attending it. Another feature is that when both parties unite in this plan to adjust compensation it tends to prevent friction and hostility between employers and employees that frequently arise in actions based on negligence of the parties. *The substituted remedy being complete with a procedure of its own, it must be regarded as exclusive. It being substitutional and complete and exclusive, we must look to the procedure of the act for the methods of administration. We are not warranted in borrowing rules and methods from the civil code not included in the act itself, methods prescribed for ordinary civil actions which the legislature for obvious reasons was seeking to avoid, and for which it provided a substitute.*" (p. 649.) (Italics ours.)

This court has repeatedly asserted the well-established principle that the workmen's compensation act establishes a procedure of its own, and that the procedure furnishes a remedy which is substantial, complete and exclusive in compensation cases. (*Echord v. Rush,* 122 Kan. 260, 251 Pac. 1112; 124 Kan. 521, 261 Pac. 820; *Fougnie v. Wilbert & Schreeb Coal Co.,* 130 Kan. 410, 286 Pac. 396; *Murphy v. Continental Casualty Co.,* 134 Kan. 455, 7 P. 2d 84; *Willis v. Skelly Oil Co.,* 135 Kan. 543, 11 P. 2d 980; *Austin v. Phillips Petroleum Co.,* 138 Kan. 258, 25 P. 2d 581; *Ketchell v. Wilson & Co.,* 140 Kan. 163, 165, 32 P. 2d 865.)

In the Willis case, *supra,* it was stated:

"The procedure adopted by the trial court was in accord with the civil procedure, but the legislature has seen fit to disregard the rules and methods of civil procedure and to substitute a system of its own, which is undoubtedly intended to be complete in itself." (p. 545.)

In *Ketchell v. Wilson & Co.,* 140 Kan. 163, 165, 32 P. 2d 865, it was again emphasized that the entire procedure under the compen-

sation act from beginning to final judgment was completely covered by the act. In *Austin v. Phillips Petroleum Co.*, 138 Kan. 258, 259, 25 P. 2d 581, it was definitely stressed that the procedure established by the act was distinctly its own and that the remedy established thereby was exclusive. Many other distinct pronouncements to the same effect might be cited, but we do not deem that necessary.

It is also well settled the commission is compelled to hear all evidence in relation to a claim for compensation (G. S. 1935, 44-534), and this court has repeatedly held the commission must hear all evidence bearing *on all points and on all branches* of the case in order that the district court may exercise its right and duty on appeal and that until this has been done and a ruling made, the case is only partly heard, it remains unfinished, the parties are left in the midst of an unfinished hearing, and the appeal to the district court is ineffectual. (*Willis v. Skelly Oil Co.*, supra, p. 546; *Brown v. Shellabarger Mill & Elev. Co.*, 142 Kan. 476, 486, 50 P. 2d 919.)

Under the compensation law the district court has no authority to remand a case to the commission for further proceedings. (*Fougnie v. Wilbert & Schreeb Coal Co.*, supra, p. 413.) The province of the district court is to review the case upon the transcript from the commission and to grant or refuse compensation or to increase or diminish the award. (*Fougnie v. Wilbert & Schreeb Coal Co.*, supra; *Willis v. Skelly Oil Co.*, supra.) The jurisdiction of the supreme court is restricted to questions of law. (G. S. 1935, 44-556.) The commissioner is not required to be a lawyer and the statute (G. S. 1935, 44-523), appropriately provides the commission shall not be bound by technical rules of procedure. In order to insure reception by the commission or examiner of all evidence germane to every issue involved, this court has definitely held the examiner or commissioner must receive all evidence pertaining *to any question in issue* even though he may entertain doubt concerning its competency. (*Walz v. Missouri Pac. Rld Co.*, 142 Kan. 164, 166, 45 Pac. 861; *Brown v. Shellabarger Mill & Elev. Co.*, supra; *Parker v. Farmers Union Mut. Ins. Co.*, 146 Kan. 832, 837-840, 73 P. 2d 1032.) In case the examiner excludes testimony considered vital on any issue the aggrieved party is not without recourse, provided he acts timely. In *Fougnie v. Wilbert & Schreeb Coal Co.*, 130 Kan. 410, 286 Pac. 396, it was stated:

"Considering these points together, it is of course both the statutory and moral duty of the commissioner to give the claimant and his adversary a fair opportunity to present their evidence; and the court sees no reason why

tendered evidence excluded by the examiner could not be put in the form of affidavits or depositions and made part of the transcript which goes to the district court for its *independent decision on the law and the facts.*" (p. 413.) (Italics ours.)

In the latter connection see, also, *Eagle-Picher M. & S. Co. v. Workmen's Compensation Comm.,* 147 Kan. 456, 458, 76 Pac. 808.

In the instant case plaintiff assumes, and we think erroneously, that the compensation commissioner has no power or authority to receive evidence concerning, and to consider the effect of, fraud or mutual mistake in the procurement of a policy, notwithstanding the fact the issues of fraud and mutual mistake expressly have been raised to defeat its liability on the policy. Its contention is based on the theory that fraud or mutual mistake, if established, warrant respectively cancellation or reformation of the policy and that the commissioner possesses no equity jurisdiction. Before we further discuss that particular contention we desire to state that we are not concerned for the moment with the question whether fraud on the part of an employer or mutual mistake in the procurement of a policy, will deprive a workman of his right to recover on the policy where his injury occurs before the policy is canceled. We shall meet that question when we reach it. In this appeal we are concerned first with the question of the jurisdiction of the district court to entertain the present action in any event. If the action cannot now be entertained by the district court, the instant action and appeal are ended. We are, however, presently concerned with the right and duty of the commissioner to receive and consider evidence of fraud or mutual mistake where such evidence pertains to some branch or issue of a compensation claim. On that subject we think plaintiff is wrong. A careful consideration of the question compels us to conclude the lawmakers intended the commissioner should have not only the right, but that it is his duty to receive evidence and rule upon every issue and branch of the case which pertains to a determination of liability and that the beneficent intent and purpose of the lawmakers cannot be thwarted or dissipated by the application of technical rules of procedure applicable only in courts of the common law. Nor are we lacking in some local precedent on the question involved. In *Walker v. Kansas Gasoline Co.,* 130 Kan. 576, 287 Pac. 235, an "agreement modifying an award," as expressly authorized by G. S. 1935, 44-527, was entered into by the parties and the workman upon payment also executed a "final receipt and release," as authorized by the same statute. The receipt and release

were approved by the commissioner. A·few days later the workman filed an application with the commission to set aside the release and receipt on the ground they were obtained by fraud and mutual mistake. Defendants, the employer and insurance carrier, contended the commission had no jurisdiction to set aside the receipt and release. The contention was denied and it was held:

"The commission empowered to administer the workmen's compensation act of 1927 has jurisdiction to hear and determine an application to set aside an agreement, release and final receipt, upon grounds of *mutual mistake, fraud or misrepresentation, and to award such compensation as is equitable and just.*" (Syl.) (Italics ours.)

In the course of the opinion it was said:

"There are other provisions in the act pointing to the purpose that the commission was to determine *all questions arising on reviews, awards, agreements and releases theretofore conferred on the district court.* It was competent for the legislature to place this power on the commission or other tribunal or officer. In a case where it was contended that an arbitrator did not have the power to consider and determine the *validity of a release,* it was said:

"'It is competent for the legislature to confer judicial power upon any tribunal or court inferior to the supreme court, and even if an arbitrator is regarded as an independent court, no reason is seen why he may not be vested with jurisdiction to hear and determine *any question* pertaining to the right of a workman to compensation which has been expressly referred to him in the order of appointment.' (*Crown v. Packing Co.,* 111 Kan. 573, 577.)

"There it was determined that an agreement and release given under a *mutual mistake of the parties* as to the nature and extent of the injury of the workman might be set aside.

"We conclude there was authority in the commission to set aside the agreement and release and to make such an award *as it determined was fair and equitable.*" (p. 582.) (Italics ours.)

Moreover, the lawmakers clearly intended the commissioner should be empowered to modify or cancel even "any award" or "the modification of an award" agreed upon by the parties "at any time before final payment." As to such power it made only one reservation, which was that an award or the modification of an award agreed upon by the parties could not be disturbed by the commissioner "after final payment." (G. S. 1935, 44-528; *Farr v. Mid-Continent Lead & Zinc Co.,* 150 Kan. 292, 92 P. 2d 124, and see opinion in same case [this day reaffirmed] on rehearing, ante, p. 51, 98 P. 2d 437.)

In *McGhay v. Eaton,* 146 Kan. 686, 73 P. 2d 15, the decision turned upon the question whether the insurance was effective at the exact time of the workmen's death. The commissioner and district

court held it was and ruled against both the employer and insurance carrier. The latter alone appealed and this court affirmed the judgment. It is, however, true that the question of the jurisdiction of the commissioner to determine whether the policy was effective was not raised or specifically determined in that action.

In view of our own statutes and former decisions interpreting them, it really is unnecessary to consider decisions from other jurisdictions. On the other hand, in view of the sincerity of the contentions advanced by the respective parties, the serious and painstaking consideration given the questions involved by the trial court, we shall refer to a few decisions from foreign jurisdictions in which the conclusion accords with our own and in which the reasoning is exceptionally clear and convincing. See *Matter of Skoczlois v. Vinocour*, 221 N. Y. 276; *Royal Indemnity Co. v. Heller*, 256 N. Y. 322; *Continental Cas. Co. v. Gleasner C. Air S. & E. Co.*, 267 N. Y. S. 706; *General Acc., etc., Corp. v. Indus. Acc. Com.*, 196 Cal. 179; *Employers' L. A. Corp. v. Indus. Acc. Com.*, 177 Cal. 771; *Bankers Indem. Ins. Co. v. Indus. Acc. Com.*, 4 Cal. 2d 89.

In the Skoczlois case, *supra*, the court, after reviewing the New York statutes, concluded:

"It would seem necessarily to follow that if the insurance company may be made a party to the original application to the commission for compensation, all its rights may be there litigated and determined precisely the same as those of the employer. The latter can raise the question, and have it determined as to whether the relation of employer and employee existed at the time the accident occurred, and for the same reason I think the insurance company can raise and have the question determined as to whether there were then a valid outstanding policy issued by it. If such questions be raised, then the determination of them lies with the commission." (p. 282)

"In order to give full effect to the provisions of the statute referred to it seems to me necessarily to follow that the legislature intended the commission should have power in the first instance to determine whether a policy of insurance covering the liability of the employer were in force when the accident occurred, and if so, the liability of the insurance company under it. (*Matter of Kelley*, 116 N. E. Rep. 308.) Unless this be the correct view of the statute, the scheme contemplated by it fails, to a large extent at least, of its purpose." (p. 283.)

In the Continental Cas. Company case, *supra*, it was held:

"Jurisdiction to hear and determine equitable defenses is incidental to general jurisdiction of industrial board to enforce policies under compensation law." (Headnote ¶ 1.)

In the opinion of that case, it was aptly said:

"On this record we think the whole matter was submitted to the board, which had full power to act, and that fact was pleaded in bar in the answer in the instant action. Even if there should be thought to be doubt as to whether the matter was actually submitted by the plaintiff to the board, still that proceeding is open, and the plaintiff is not as yet precluded from tendering the issue with complete formality." (p. 709.)

In the Royal Indemnity Company case, *supra,* the pertinent principles involved are so clearly presented and the reasoning so logical, that we take the liberty of quoting from it at some length, as follows:

"Where and how has the jurisdiction to consider equitable defenses been withheld from the board? It is difficult to put one's finger on any constitutional or statutory provision or judicial decision which thus limits its jurisdiction. The difference, once regarded as basic, between the method of trying legal defenses and equitable defenses, no longer exists. Independent suits are no longer necessary to establish equitable rights. The question was elaborately discussed by Cardozo, J., in *Susquehanna S. S. Co. v. Anderson & Co.* (239 N. Y. 285), and the conclusion was reached that equitable defenses are triable in the same way as defenses that are legal. The jurisdiction to hear and determine equitable defenses is incidental to the general jurisdiction of the board to enforce policies under the workmen's compensation law. Without such jurisdiction the old rule is reviewed without reason.

"The defense was tendered by the insurance carrier and the evidence was heard. As a practical proposition, the carrier should be bound by the determination of the industrial board, subject to judicial review, as provided in sections 20, 23 of the law. The award will be examined on the appeal in the appellate division. The decision of the board is based on an erroneous theory, so far as it denies itself jurisdiction and holds itself bound by the letter of the policy, but the evidence will be before the court for review to determine whether the plaintiff herein has made out a case of nonliability under the policy. (*Matter of Jaabeck v. Crane's Sons Co.,* 238 N. Y. 314, 317, 318.) The attorney general, on behalf of the industrial board, now argues that the judgment before us should be affirmed on the ground that the jurisdiction of the board was exclusive and its award binding.

"If the term of the coverage was mutually agreed on and there was a scrivener's mistake as to the term of the policy, due to mutual inadvertence, such as the failure to read the policy and note the error after the minds of the parties had met, the equitable defense may be interposed by the insurance company. If no term was mutually agreed on and the insurance company made a unilateral mistake, it should have canceled its policy, as provided in section 54, when it discovered that fact. Otherwise, in the absence of fraud, the contract as written and delivered must be deemed to be the contract of the parties. (*Metzger v. Aetna Ins. Co.,* 227 N. Y. 411; *Lewitt & Co., Inc., v. Jewelers' Safety F. Soc.,* 249 N. Y. 217, 223.) These are questions within the wide scope of the powers intrusted to the industrial board for its determination.

"Such matters should be disposed of summarily before one tribunal so that prompt adjustment of liability for industrial accidents may be obtained without unnecessary litigation and expense. Here we have an accident which happened more than three years ago with the question of liability still unsettled. Such delays are inconsistent with the purpose of the remedies provided by the compensation law." (pp. 326, 327, 328.)

While the California act may, in some respects and at first sight, appear to be somewhat broader than our own, it corresponds quite accurately in its intended effect with the obvious intent disclosed by our own statute. In the *General Acc., etc., Corp.,* case, *supra,* the California court said:

"There can be no doubt but that the commisson is vested by constitutional and legislative power to hear and determine every issue raised by the parties to this controversy, including the validity of the policy and the question of fraud alleged in its procurement and that the parties are not required to invoke either a court of law or equity in the determination of said questions. (Art. XX, sec. 21, Const.; Workmen's Compensation, Insurance and Safety Act, secs. 1, 55 and 63 (Stats. 1913, pp. 279, 307, 308); *Employers' L. A. Corp. v. Industrial Acc. Com.,* 177 Cal. 771 [171 Pac. 935].)" (pp. 190, 191.)

It is also well to note that in conformity with the well-established rule in this state that the remedy under the compensation act is substantial, complete and exclusive, this court has, on various occasions denied the right of an employee to bring an independent action in the district court against the insurance carrier on the policy. (*Murphy v. Continental Cas. Co.,* 134 Kan. 455, 7 P. 2d 84; *McGuire v. United States F. & G. Co.,* 134 Kan. 779, 8 P. 2d 389; *Dollar v. General Accident, Fire & Life Corp.,* 136 Kan. 368, 15 P. 2d 449.) In the Murphy case, we held:

"Our workmen's compensation statute requires that the insurance policy of the employer contain a provision that the same may be enforced by any person entitled to any rights under the act as well as by the employer. Construing this statute, it is held that proceedings *by the workman against the insurance carrier* for injuries compensable under the act *must be before the compensation commissioner and in harmony with the procedure outlined by the compensation act."* (Syl. ¶ 1.) (Italics ours.)

Touching plaintiff's contention in that case concerning his right to ignore the procedure outlined in the compensation act and to bring an independent action in the district court, it was said:

"Such a holding would destroy the workmen's compensation act, or at least its administration, for it would leave the workmen's compensation commissioner nothing which he necessarily had to do. We cannot accept such an interpretation. The cases relied upon by appellant do not require or authorize such a conclusion." (p. 458.)

In the McGuire case, after reviewing the statutes and former decisions, we again stated:

"We conclude, where the employment and the injury are within the workmen's compensation act, that the remedy and procedure provided therein *are exclusive, and the district court is without jurisdiction to entertain an action at the instance of the employee against the insurance carrier until the remedies provided in the act have been exhausted.*" (p. 781.) (Italics ours.)

In the Dollar case the court concluded its treatment of this precise question, as follows:

"A petition which does not plead resort to proceedings under the workmen's compensation act does not state a cause of action." (p. 372.)

In the instant case plaintiff has pleaded only partial resort to proceedings under the compensation act. The petition affirmatively discloses proceedings under the act have not been exhausted and that the appeal from the decision of the commissioner is pending in the district court. The parties stipulated as to the facts touching the alleged fraud or mutual mistake. The commissioner was in error in ruling that he could not pass on each and every branch and issue of the case pertaining to liability. Irrespective, however, of such erroneous view, the commissioner did make an award. The transcript, according to the petition, contains the stipulation and the district court has an opportunity to, and it is required to, make its independent decision on the law and facts on the basis of the transcript. (*Fougnie v. Wilbert & Schreeb Coal Co.,* supra, p. 412.) The insurance carrier is, therefore, deprived of no substantial right to assert its defense to liability under the policy in the manner contemplated by the compensation act.

One other subject might be noted. It is the contractual relation of the insurance carrier. It is well to remember that an insurance carrier is in no sense compelled to subject itself to the rules and procedure of the compensation act. That is, no insurance carrier is required to write compensation insurance. Its act is voluntary. Its relation to the employer and employee are contractual. It agreed in its policy to subject itself to the jurisdiction of the commission and to the provisions of the workmen's compensation law, so long as the policy remained in force. Its obligations, according to the policy contract, are direct obligations and promises to the employee. The insurance carrier, by its contract, agreed to make itself directly and primarily liable to such employee. Moreover, and of transcending importance, is the fact that in its own policy it agreed the policy was enforceable against it by the workman "*in any manner*

*permitted by law."* In addition to that agreement it expressly agreed the policy was enforceable against it in any manner permitted by law *"where claims or proceedings"* are brought against the corporation alone or jointly with this employer. (See, Policy paragraph one (a) and D.) It cannot now repudiate its contract. The workman had a right to rely upon the contract and cannot now be compelled to litigate some incidental feature of his claim to compensation in some other tribunal. Moreover, that tribunal, the district court, has no jurisdiction to entertain this action.

In arriving at our conclusion relative to the jurisdiction of the compensation commission we have not been unmindful of the following cases cited by the insurance carrier, in some of which, at least, a contrary view is taken. (*Continental Cas. Co. v. Ind. Com.*, 61 Utah 16, 210 Pac. 127; *Empey et al. v. Industrial Commission of Utah et al.*, 91 Utah 234, 63 P. 2d 630; *Burke et al. v. Ind. Com. of Utah et al.*, 75 Utah 441, 286 Pac. 623; *Kelley v. Tomahawk Motor Co.*, 206 Wis. 568; *Federal Surety Co. v. State Industrial Com.*, 149 Okla. 144; *Kelly v. Howard et al.*, 123 S. W. 2d [Mo.] 584.) Upon careful consideration we have concluded that the views we have expressed herein are in conformity with the manifest intent and purpose of our compensation act. Among the reasons which impel our conclusion is the view well expressed in *Employers' L. A. Corp. v. Indus. Acc. Com.*, supra. The California court there said:

"If the commission may, in any case, make an award against one who has agreed to stand in the employer's place and protect him against claims by his employees, it must have the power to determine all questions of law and fact upon which the liability of the alleged insurance carrier depends. To hold that the mere denial of the binding force of a policy deprives the commission of jurisdiction would introduce endless and unnecessary complications and difficulties into the administration of the law." (p. 775.)

The Utah and Wisconsin cases cited by appellee are reviewed in *Bankers Indem. Ins. Co. v. Indus. Acc. Com.*, supra. We need not repeat that discussion here. The *Allied Mutuals L. Ins. Co. v. Interstate C. Co.*, 235 N. Y. S. 541, is not a decision from the New York court of last resort and appears to be out of harmony with the previous decisions herein cited from that state. In the Oklahoma case the specific question of the jurisdiction of the commission does not appear to have been raised or determined. The Missouri case, cited by appellee, appears to follow the Utah decisions.

We are convinced the judgment of the trial court was sound and should be affirmed. It is so ordered.

ALLEN, J., dissents.