No. 34,497

J. H. Jennings, *Appellee*, v. The Aylward Production Company and The Travelers Insurance Company, *Appellants*.

(98 P. 2d 454)

Opinion filed January 27, 1940.

*C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the appellants.

*Everett L. Baker* and *Frederick Woleslagel,* both of Lyons, for the appellee.

The opinion of the court was delivered by

Allen, J.: This is a proceeding to vacate an award of compensation entered upon joint petition and stipulation and for an allowance of additional compensation.

Claimant was injured May 14, 1937. He was sent by respondent to Dr. Charles Rombold, an orthopedic surgeon of Wichita, for treatment. Compensation for temporary total disability was paid up to and including September 3, 1937. Claimant returned to his regular duties for respondent on September 2, 1937, and continued

working for respondent until about December 1, 1937, when respondent ceased drilling operations. Doctor Rombold was of the opinion from an examination made about October 4, 1937, that claimant would have a five percent permanent partial disability in his arm. Claimant himself testified that the reason no disposition was made of his claim for permanent partial disability until January 12, 1938, was that he wanted to use his arm in working so that he could ascertain from actual experience how much disability there was in the arm.

On January 12, 1938, some six weeks after claimant left respondent's employ, the claimant upon the one hand and respondent and insurance carrier upon the other hand, entered into a joint petition and stipulation. The joint petition and stipulation was in the form prescribed by the commissioner.

In the joint petition and stipulation the parties agreed that they were all under the workmen's compensation act; that The Travelers Insurance Company was the insurance carrier; that on May 14, 1937, claimant met with personal injury by accident arising out of and in the course of his employment; that his average weekly wage was $49 and his compensation rate $18; that his injuries resulted in total disability for fifteen weeks, followed by a five percent permanent partial loss of use of his right arm, and that claimant was entitled to compensation for 9.75 weeks in addition to the fifteen weeks compensation for temporary total disability which had theretofore been paid him. The joint petition and stipulation also contained the following provisions:

"The parties hereby waive notice and formal hearing herein and agree that the commissioner of workmen's compensation may make and enter an award herein based upon the facts as set forth, said award to be binding and of the same effect as if the facts had been testified to and adduced at a formal hearing, and that costs herein may be taxed and assessed in the discretion of the commissioner."

On January 19, 1938, the commissioner made an award in which he made specific findings of the facts agreed upon in the joint petition and stipulation and awarded compensation for 9.75 compensable weeks at the rate of $18 per week. The compensation awarded was all past due, more than eighteen weeks having elapsed since claimant returned to work on September 2, 1937. The claimant testified at the hearing that the amount of this award had been paid. A release which he testified he had signed was admitted in evidence.

Doctor Rombold again examined the claimant in June, 1938, five months after the entry of the award, and testified that his examination on that date disclosed a permanent disability of five percent in the arm and confirmed his earlier opinion that claimant's disability would not exceed five percent.

On November 19, 1938, the claimant filed an application with the commissioner asking that the release and receipt executed by the claimant be reviewed and set aside for the following reasons:

"1. That said release was procured and executed by and as the result of fraud practiced upon the claimant by the respondents and insurance carrier herein, and their agents.

"2. That said release and receipt were procured and induced and executed by and as the result of duress and undue influence brought to bear upon this claimant by the respondents and insurance carrier herein, and their agents.

"3. That said release and receipt were caused to be executed and were executed under mutual mistake of the parties hereto, which mistake is prejudicial to the claimant herein, and but for said mistake said release and receipt would not have been executed by this claimant.

"Wherefore: Said claimant prays that the commissioner set a day certain upon which claimant may introduce his evidence in regard to the above application and prays that said release and receipt be set aside and held for naught, and that forthwith claimant's claim for compensation be set down for hearing."

A hearing was had and the commissioner made findings as follows:

"It is found from the evidence that the joint petition and stipulation heretofore filed on January 14, 1938, and the award entered thereon on January 19, 1938, constituted a final receipt and release, and claimant having made application to set aside such final receipt and release within one year of its execution, said final receipt and release is hereby set aside and held for naught, and the claimant is found to be entitled to compensation for fifteen (15) weeks' temporary total disability, followed by thirty-five percent (35%) permanent partial loss of use of his right arm, entitling him to sixty-eight and 25/100 (68.25) weeks, or a total of eighty-three and 25/100 (83.25) weeks at the rate of eighteen dollars ($18) per week, a total of one thousand four hundred ninety-eight and 50/100 dollars ($1,498.50), which is now due and owing and should be paid in one lump sum, less the amount of compensation heretofore paid."

An award was entered in accordance with the findings. On appeal this award was approved and confirmed by the district court. This appeal followed.

This case was argued and submitted while a motion for a rehearing was pending in *Farr v. Mid-Continent Lead & Zinc Co.*, 150 Kan. 292, 92 P. 2d 124. Upon rehearing, that decision has been affirmed. See *Farr v. Mid-Continent Lead & Zinc Co.*, ante, p. 51, 98 P. 2d 437

(this day decided). Upon the authority of that case the judgment of the trial court must be reversed. It is so ordered.

WEDELL, J. (concurring): I desire to have it clearly noted that I agree only with the result in the instant case and only with the result stated in the majority view as set forth in the first opinion in the case of *Farr v. Mid-Continent Lead & Zinc Co.*, 150 Kan. 292, 92 P. 2d 124. The reasons which formed the basis of my conclusions in the Farr case may be found in my concurring opinion attached to the second opinion of this court written on a rehearing of the Farr case, and handed down this day. (Ante, p. 64.)

HARVEY, J., dissents for the reasons stated in his dissenting opinion in *Farr v. Mid-Continent Lead & Zinc Co.*, this day decided. (Ante, p. 78.)

SMITH and ALLEN, JJ., dissent.